IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANEEN BERRY,

            **Plaintiff,**

vs.                                                     No. CIV 06-0639 RB/ACT

RODNEY IMPEY,

            **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** is before the Court on Plaintiff's Motion for Partial Summary Judgment for Liability on Count I (Doc. 40), filed on July 18, 2007, and Plaintiff's Motion for Use of Trial Depositions, or in the Alternative, that the Trial be Conducted in Albuquerque, New Mexico (Doc. 41), filed on July 18, 2007. Jurisdiction arises under 28 U.S.C. §§ 1331, 1343, and 1367. Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I deny Plaintiff's motion for partial summary judgment, grant Defendant qualified immunity on Plaintiff's unlawful detention claim, and deny Plaintiff's requests to use trial depositions or to move the trial to Albuquerque. In order to ameliorate Plaintiff's concerns regarding costs associated with holding the trial in Las Cruces, New Mexico, the Court will entertain a request to bifurcate the trial.

**I.     Background.**

Plaintiff seeks damages under 42 U.S.C. §1983 for violation of her rights under the Fourth and Fourteenth Amendments, and state law for assault, battery, false arrest, and false imprisonment. At the time of the incident, Defendant was a patrol officer with the Albuquerque Police Department.[1]

Plaintiff moves for partial summary judgment on her unlawful detention claim. ([Doc. 46],

---

[1] Defendant has been employed by the United States Coast Guard since August 2006. ([Doc. 46] Pl. Ex. 1, Impey Dep. 3-4.)

Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. for Liability in Count I at 5.)  In support of her motion for partial summary judgment, Plaintiff submitted excerpts of Defendant's deposition testimony and the criminal complaint.  Plaintiff submitted neither deposition testimony, nor affidavit, in support of her version of the incident as set forth in her unverified Complaint.  Plaintiff is represented by counsel.

Plaintiff also requests leave to use videotaped depositions at trial, pursuant to Fed. R. Civ. P. 32(a)(3)(B), or to move the trial to Albuquerque.[2]  In support of this motion, Plaintiff submitted affidavits from her health care providers who have been identified as witnesses in this case.  The affidavits indicate that the health care providers live and work in Albuquerque and establishing that the cost for the appearance of these witnesses at trial in Las Cruces would total $7,000.00.  None of Plaintiff's witnesses have been deposed.

Defendant opposes Plaintiff's motions, and asserts qualified immunity with respect to the unlawful detention claim.

## II.    Facts.

The following statement of facts is set forth in the light most favorable to Defendant, the non-moving party, with all reasonable inferences from the record drawn in his favor.  *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).

On December 28, 2004, at approximately 11:00 p.m., Defendant was dispatched to a burglary alarm call at 2703 Broadbent NE, in Albuquerque.  (Impey Dep. 15.)  The location consists of an office complex comprised of suites surrounded by a large parking lot.  (*Id*.)

The call was dispatched as Priority 1, which requires the "highest level of response" by  two

---

[2]A jury trial is set for October 22, 2007 in Las Cruces, New Mexico, which is located approximately 220 miles south of Albuquerque.

officers.  (Impey Dep. 17.)  Priority 1 calls connote "something . . .  going down," such as a person in distress or property damage.  (*Id*.)  While the majority of alarm calls were false alarms, more and more calls in that area had become true alarms.  (Impey Dep. 16-17.)  Although Defendant was the backup officer dispatched to the call, Defendant arrived at the scene before Albuquerque Police Department Officer Kendall, who was the primary officer dispatched to the call.  (Impey Dep. 17.)

When Defendant arrived at the location, he heard the alarm sounding from the office complex. (Impey Dep. 17; 21.)  Defendant noticed a gray Mitsubishi two-door vehicle in the parking lot, preparing to exit the parking lot.  (Impey Dep. 21.)  Defendant immediately shifted his attention from the alarm to the Mitsubishi because Defendant surmised that a potential burglary offender might be in the process of leaving the scene.  (*Id*.)  Defendant was unable to see how many occupants were in the Mitsubishi.  (*Id*.)  Believing that the person, or persons, inside the Mitsubishi might have been involved in a possible burglary, Defendant engaged his lights and stopped the Mitsubishi.  (*Id*.)

As Defendant approached the Mitsubishi on foot, he shined his flashlight inside the vehicle and saw nothing amiss.  (Impey Dep. 24.)  Upon reaching the driver's window, Defendant found Plaintiff alone in the Mitsubishi, engaged in a conversation on her cell phone.  (Impey Dep. 24; 26.)

Defendant asked Plaintiff to get off the phone.  (Impey Dep. 25.)  Plaintiff stated she did not want to get off the phone.  (*Id*.)  Plaintiff asked Defendant whether he wanted to speak with the other person on the phone.  (*Id*.)  Defendant informed Plaintiff that he did not want to speak with the other person on the phone; Defendant indicated that he wanted to conduct an investigation.  (*Id*.)

Several times, in a polite, pleasant and professional manner, Defendant asked Plaintiff to get off the phone so that he could conduct an investigation.  (Impey Dep. 25-28.)  Defendant stated to Plaintiff: "Ma'am, could you please get off your cell phone?"  (Impey Dep. 28.)

3

Plaintiff refused to comply and exhibited a "rude and insolent manner." (Impey Dep. 25.) In response to Defendant's requests that she get off the phone, Plaintiff stated: "Can I help you? . . . I want a lawyer . . . Do you want to talk to the person on the phone?" (Impey Dep. 27.)

Defendant turned on his belt tape about 30 seconds to one minute into the encounter.[3] (Impey Dep. 28-29.) Defendant's deposition testimony indicates that the following exchange occurred:

Defendant: "I need your license."

Plaintiff: "This is ridiculous."

Defendant: "Is it?"

Plaintiff: "I just clocked out."

Defendant: "Okay. Is anybody else there?"

Plaintiff: "Why would anyone else be there? No, but I want - - where is the security guard?" (Impey Dep. 30 (quoting transcript of belt tape).)

Defendant specifically asked Plaintiff for her driver's license and she indicated that she did not want to give it to him. (Impey Dep. 37.) After a specific request for her license, the following exchange occurred:

Plaintiff: "I'm completely innocent. I just walked off the job."

Defendant: "Okay. How do I know that?" (Impey Dep. 37 (quoting transcript of belt tape).)

Defendant directed Plaintiff to "Get out of the vehicle." (Impey Dep. 43.) When Plaintiff did not comply, Defendant opened the door. (*Id.*) Plaintiff attempted to close the door and struck

---

[3] The transcript of the belt tape was discussed at Defendant's deposition, but the transcript was not included in the record. (*See* Impey Dep. 28-29.)

Defendant with the door.  (*Id.* )

When Plaintiff attempted to close the door a second time, Defendant grabbed Plaintiff's left wrist.  (Impey Dep 44.)  Plaintiff pulled away and said something to the effect of "Don't touch me." (*Id.* )  Defendant grabbed Plaintiff's arm again and tried to pull Plaintiff from the vehicle.  (Impey Dep. 47.)

Defendant warned Plaintiff that he would spray her with O.C. spray if she did not comply with his commands.  ([Doc. 47], Pl. Ex. 2, Criminal Compl. 2.) Plaintiff did not comply.  (*Id.*) Defendant sprayed Plaintiff with O.C. spray and used an "arm bar" to remove her from the vehicle. (*Id*.)  Plaintiff was handcuffed and arrested.  (Impey Dep. 63.)

Plaintiff did not inform Defendant that she was employed in the building and she was leaving work until after she was placed in handcuffs.  (Impey Dep. 30.)  Plaintiff was charged with battery, assault on police officer, obstructing an investigation, and resisting arrest.  ([Doc. 47], Pl. Ex. 2, Criminal Compl. 1.)

## III.    Standard.

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach*, 439 F.3d at 1207 (quoting Rule 56(c)).  The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine issue of

material fact and entitlement to judgment as a matter of law.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If this burden is met, the nonmovant must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Id.* (citations omitted).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

**IV.    Discussion.**

      **A.    Plaintiff is not entitled to partial summary judgment on her unlawful detention claim.**

Plaintiff moves for partial summary judgment with respect to her claim that Defendant unlawfully detained her.  Plaintiff is not entitled to summary judgment on this claim because the evidence of record establishes that Defendant had reasonable suspicion to stop Plaintiff and request her identification.

"Beginning with *Terry v. Ohio*, 392 U.S. 1 (1968), the Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further."  *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt County*, 542 U.S. 177, 185 (2004).  A two-part analysis governs the determination of whether an investigative detention is constitutionally permissible. *Terry*, 392 U.S. at 19-20; *United States v. Samuels*, 493 F.3d 1187, 1191 (10th Cir. 2007).

The *Terry* analysis asks: (1) whether the officer's action was justified at its inception, and (2) whether the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place.  *Samuels*, 493 F.3d at 1191 (citing *Terry*, 392 U.S. at 20).  When evaluating the existence of reasonable suspicion, a court must look to the "totality of circumstances"

6

to see whether the officer had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, (2002) (internal quotations omitted).

The evidence establishes reasonable suspicion to justify the stop at its inception.   At approximately 11:00 p.m., Defendant and another officer were dispatched to a Priority 1 call regarding a burglary alarm.  More and more alarm calls in the area were true, as opposed to false, alarms.  Defendant was the first officer on the scene.  When Defendant arrived at the office complex, he heard the burglary alarm sounding.  One vehicle was preparing to exit the parking lot of the location where the alarm was sounding.  Plaintiff was the driver of the lone vehicle, and she was driving away from the sounding alarm.

Factual circumstances similar to those present here have been found by the Tenth Circuit and other courts to create a reasonable suspicion of criminal activity justifying an investigatory stop. *See Oliver v. Woods*, 209 F.3d 1179, 1187-88 (10th Cir. 2000) (finding reasonable suspicion to stop driver who triggered silent alarm when he drove into the parking lot of an auto repair shop in order to drop off his car before business hours); *United States v. Dawdy*, 46 F.3d 1427 (8th Cir. 1995) (finding reasonable suspicion to stop driver of car parked late at night in deserted parking lot of closed business that had been source of recent false burglary alarms; defendant started car and attempted to leave when police car entered lot); *United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir. 1987) (finding reasonable suspicion to stop man walking away from a deserted area at night where burglary alarm had just gone off).  Similarly, the totality of the circumstances in this case created  reasonable suspicion justifying the initial stop.

The second prong of the *Terry* analysis inquires whether the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry*, 392 U.S. at 20. After Defendant stopped Plaintiff, he asked for her identification.  "[I]t is well

7

established that an officer may ask a suspect to identify [herself] in the course of a *Terry* stop."

*Hiibel*, 542 U.S. at 186.  This stems from the fact that:

> Obtaining a suspect's name in the course of a Terry stop serves important government interests.  Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder.  On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere.

*Id.*

Accordingly, "[w]hen an officer is conducting a lawful investigative detention based on reasonable suspicion of criminal activity, the officer may ask for identification and for an explanation of the suspect's presence in the area."  *Oliver*, 209 F.3d at 1189 (citations omitted).  The officer is also permitted to briefly detain the individual until the investigation is completed.  *Oliver*, 209 F.3d at 1189 (citing *United States v. Trimble*, 986 F.2d 394, 397-98 (10th Cir. 1993)).

Defendant testified in his deposition that he requested Plaintiff's license about 30 seconds to one minute after he initiated contact with Plaintiff.[4]  The request for identification was reasonably related in scope to the circumstances that justified the stop, *i.e.*, investigation of a possible burglary. Indeed, the same factors that justified the stop justified the request for identification.  *See United States v. Villagrana-Flores*, 467 F.3d 1269, 1276 (10th Cir. 2006) (citing *Hayes v. Florida*, 470 U.S. 811, 816 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify [her], . . . or to . . . obtain additional information.").  Defendant's actions in requesting that Plaintiff get off the phone and produce her identification were reasonably related in scope to the circumstances which justified

---

[4] Plaintiff's version of the facts as set out in the Complaint are in accord with Defendant's deposition testimony up to the point where Defendant asked for her identification.  Plaintiff alleged in the Complaint that Defendant first asked Plaintiff about the alarm and asked for her identification soon thereafter.  (Compl. ¶¶ 6-8.)

the interference in the first place.

Plaintiff had the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Plaintiff failed to meet her initial summary judgment burden.  On the contrary, the evidence establishes that the stop was justified by reasonable suspicion of criminal activity at its inception, and its scope was reasonably related to the circumstances which justified the stop.  The only evidence in the record, which consists of Defendant's deposition and the police report, demonstrates that the stop comported with the requirements of the Fourth Amendment.

On summary judgment, the record must be construed in favor of the non-moving party.  In that favorable light, the evidence shows that Defendant did not violate the Fourth Amendment when he stopped Plaintiff to investigate a possible burglary.  Plaintiff presented no evidence to contradict this showing.  Under these circumstances, Plaintiff is not entitled to summary judgment on her unlawful detention claim.

**B.    Defendant is entitled to qualified immunity on the §1983 unlawful detention claim.**

In his response to Plaintiff's motion for partial summary judgment, Defendant asserts that he is entitled to qualified immunity with respect to the unlawful detention claim.  ([Doc. 54], Def.'s Resp. in Opp'n to Pl.'s Am. Mot. for Summ. J. at 5.)  A government official is entitled to qualified immunity from civil damages under §1983 when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to show (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory

right was clearly established when the alleged violation occurred. *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) (citing *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) and *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  If the plaintiff does not satisfy either portion of this two-pronged test, the Court must grant the defendant qualified immunity. *Verdecia*, 327 F.3d at 1174 (citing *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001)).

In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If, and only if, the court finds that a favorable view of the facts alleged establishes a violation of a constitutional right, the inquiry then proceeds to the next step; whether the right was clearly established at the time of the defendant's alleged unlawful conduct. *Id*; *see also Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007).

In rebutting a qualified immunity claim at the summary judgment level, a plaintiff "can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)[.]" *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1299 (10th Cir. 2004) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).  Plaintiff may not rest on her unverified Complaint in order to withstand Defendant's assertion of qualified immunity at the summary judgment stage.

Plaintiff has presented no evidence that  Defendant violated a constitutional right.  The only evidence in the record of what transpired during the incident consists of Defendant's deposition testimony and the police report.  The record contains no evidence in support of Plaintiff's version of the incident.

Where the facts are undisputed, the question of objective reasonableness under the Fourth Amendment presents a legal determination. *Mecham v. Frazier*, _____ F.3d _____, 2007 WL 2608624

10

*2 (10th Cir. Sept. 11, 2007).  This concept was emphasized by the Tenth Circuit in *Medina v.*

*Cram*, 252 F.3d 1124 (10th Cir. 2001):

> Whether the officers acted reasonably, however, is a legal determination in the absence of disputed material facts.  Although the reasonableness standard is inevitably fact dependent, it should not be reserved for the jury in the absence of disputed material facts.  Because qualified immunity is a question of law to be resolved at the earliest possible stage of litigation, courts often engage in determinations of reasonableness under the Fourth Amendment, necessarily applying the undisputed material facts to the legal standards.

*Medina*, 252 F.3d at 1131.

 Here, Plaintiff has failed to controvert Defendant's version of the facts.  In light of *Mecham*

and *Medina*, the question of qualified immunity should be resolved as a matter of law.  *See also*

*Scott*, 127 S.Ct. at 1776-77 (deciding qualified immunity in Fourth Amendment case based on a

videotape of incident).  As more fully discussed in Section IV A, the undisputed facts establish that

Defendant's actions in effectuating the investigative stop and brief detention of Plaintiff comported

with the requirements of the Fourth Amendment.

        In reply to Defendant's assertion of qualified immunity, Plaintiff had the burden to show

Defendant violated a constitutional or statutory right.  *Verdecia v. Adams*, 327 F.3d at 1174.

Plaintiff has presented no evidence in support of her version of the facts.  Plaintiff has failed to meet

her burden to show that Defendant violated a constitutional or statutory right.  In that Plaintiff failed

to satisfy the first portion of the two-pronged test, the Court must grant the defendant qualified

immunity with respect to Plaintiff's unlawful detention claim.

**C.      Plaintiff's requests for trial depositions or to move the trial to Albuquerque are denied**.

        Plaintiff seeks leave to use videotaped depositions of her healthcare providers at trial in order

to avert the costs of presenting such testimony in Las Cruces.  In light of a recent scheduling

conflict, and the fact that Plaintiff's witnesses are located in Albuquerque, I have arranged to transfer the case to the Honorable James A. Parker, United States District Judge, who is based in Albuquerque.  The transfer renders Plaintiff's requests for trial depositions or to move the trial to Albuquerque moot.

**WHEREFORE,**

     **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment for Liability on Count I (Doc. 40), filed on July 18, 2007, is **DENIED.**

     **IT IS FURTHER ORDERED** that Defendant is **GRANTED** qualified immunity with respect to the 42 U.S.C. § 1983 unlawful detention claim.

     **IT IS FURTHER ORDERED** that Plaintiff's Motion for Use of Trial Depositions, or in the Alternative, that the Trial be Conducted in Albuquerque (Doc. 41), filed on July 18, 2007, is **DENIED AS MOOT.**

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**